## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| ELIZABETH MCLEOD, HEIDI O'SULLIVAN, SHERRI SLOCUM, IVETTE HARPER, ROBERT WEST, KEVIN STEMWELL, STEPHEN MILLER, PEGGY MAXE, KARALYN LITTLEFIELD, COLLEEN FRIEDRICHS, ARLENE HORNILLA, MARILYN EPP, DWIGHT SEVALDSON, ANN CARLSON, MICHAEL BAEHR, GABRIELE BAUER, MARK DAVIS, SUSANNE DEHNKE, FRANK DELANEY, PAULA FREEMAN-BROWN, BARBARA FUGLIE, RICHARD FUGLIE, CHRISTOPHER GUNN, MICHELLE LAURENCE, ROBERT MORRIS, VICKI NELLEN-JUNGERS, HEIDI NEUMANN, GREG NORMAN, MICHELLE RACE, SUSAN RYAN, TIMOTHY SCHROEDER, DIANE SUNDQUIST, and GREG ZIMPRICH, | Civil No.  15-494 (JRT/HB) |

Plaintiffs,

**MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS AND COMPEL ARBITRATION**

v.

GENERAL MILLS, INC.,

Defendant.

---

Stephen J. Snyder, Brent Snyder, C. and Craig A. Brandt, **SNYDER & BRANDT, P.A.**, 120 South Sixth Street, Suite 2550, Minneapolis, MN 55402, for plaintiffs.

Marko J. Mrkonich and Susan K. Fitzke, **LITTLER MENDELSON, P.C.**, 80 South Eighth Street, Suite 1300, Minneapolis, MN  55402, for defendant.

Laurie A. Vasichek, **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**, 330 South Second Avenue, Suite 720, Minneapolis, MN 55401, for amicus curiae Equal Employment Opportunity Commission.

Daniel B. Kohrman, **AARP FOUNDATION LITIGATION**, 601 E Street N.W., Fourth Floor, Building B, Washington, DC  20049, for movant AARP.

In June 2012, defendant General Mills, Inc. ("General Mills") terminated approximately 850 employees as part of a corporate restructuring plan called "Project Refuel."  Elizabeth McLeod and 32 other persons aged 40 or above ("plaintiffs") were among those laid off as part of the restructuring, and have brought this action alleging that they were improperly terminated in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").[1]

General Mills moves the Court to dismiss the plaintiffs' complaint under the Federal Arbitration Act ("FAA") and Federal Rule of Civil Procedure 12(b)(1), with prejudice, because each of the plaintiffs signed a binding arbitration agreement and general release agreement as a condition of receipt of a severance package.  General Mills also moves to compel arbitration on an individual basis as per the arbitration agreement.  General Mills additionally requests that, in the event that the motion to dismiss is not granted in its entirety, the Court strikes the collective action allegations contained in the Amended Complaint and stays the case pending arbitration.  Finally, General Mills requests that the Court award reasonable expenses.  Because the language of the Older Workers Benefit Protection Act of 1990 ("OWBPA"), specifically 29 U.S.C.

---

[1] The initial complaint filed on February 11, 2015 included only 14 plaintiffs.  (Compl. ¶¶ 13-26, Feb. 11, 2015, Docket No. 1.)  On March 26, 2015, the plaintiffs filed an amended complaint that added an additional 19 plaintiffs but otherwise remained the same as the initial complaint.  (Am. Compl. ¶¶ 27-45, Mar. 26, 2015, Docket No. 15.)

§ 626(f)(3), mandates that a dispute like this one be heard in a "court of competent jurisdiction," the Court will deny General Mills' motion to dismiss and compel arbitration.

## BACKGROUND

### I.   EMPLOYEES' TERMINATION AND ALLEGATIONS AGAINST GENERAL MILLS

In June 2012, General Mills terminated approximately 850 employees as part of a corporate restructuring project called "Project Refuel." (Am. Compl. ¶¶ 2-3, Mar. 26, 2015, Docket No. 15.) The plaintiffs – 33 General Mills employees who were laid off as a part of Project Refuel – allege that the layoffs violated the ADEA because they "affected employees age 40 or over at much higher rates than younger employees." (*Id.* ¶¶ 3-4.) Additionally, the plaintiffs allege that General Mills was replacing employees terminated under Project Refuel with younger employees. (*Id.* ¶ 3.) In support of those allegations, the plaintiffs cite statistics, derived from employee termination data, which purportedly show that older employees were many times more likely than younger employees to be laid off during the restructuring. (*Id.* ¶¶ 86-103.) They accuse General Mills of engaging in an overarching pattern or practice of age discrimination. (*Id.* ¶¶ 74-78.)

Specifically, the plaintiffs provide the following biographical information about each plaintiff named in the action:

| Plaintiff | Age at Term- ination | Former Position | Approximate Years[2] of General Mills Employment | Release/Arbitra- tion Agreement Exhibit Number (McLeod – Carlson, Docket No. 8; Baehr - Zimprich, Docket No. 21) |
|---|---|---|---|---|
| Elizabeth McLeod | 59 | Building Coordinator | 31 | Ex. 8 |
| Heidi O'Sullivan | 49 | Senior Scientist II | 22 | Ex. 10 |
| Sherri Slocum | 51 | Principal Scientist | 22 | Ex. 12 |
| Ivette Harper | 44 | Senior Scientist II | 20 | Ex. 4 |
| Robert West | 53 | Senior Facility Engineer | 19 | Ex. 14 |
| Kevin Stemwell | 54 | Senior Analyst III | 17 | Ex. 13 |
| Stephen Miller | 61 | Network Security Analyst 3 | 16 | Ex. 9 |
| Peggy Maxe | 42 | Trade Finance Analyst | 15 | Ex. 7 |
| Karalyn Littlefield | 44 | Senior Research Food Scientist II | 14 | Ex. 6 |
| Colleen Friedrichs | 62 | Administrative Assistant | 10 | Ex. 3 |
| Arlene Hornilla | 46 | Senior Patent Counsel | 9 | Ex. 5 |
| Marilyn Epp | 64 | Administrative Assistant | 8 | Ex. 2 |
| Dwight Sevaldson | 55 | Contract Operations Manager | 6 | Ex. 11 |
| Ann Carlson | 53 | Senior Manager of Employee Benefits | 2 | Ex. 1 |
| Michael Baehr | 53 | Investment Recovery Administrator | 35 | Ex. 1 |
| Gabriele Bauer | 56 | Senior Human Resources Analyst | 26 | Ex. 2 |

---

[2] The figure includes years of service at predecessor companies acquired by General Mills.

| Plaintiff | Age at Term-ination | Former Position | Approximate Years[2] of General Mills Employment | Release/Arbitra-tion Agreement Exhibit Number (McLeod – Carlson, Docket No. 8; Baehr - Zimprich, Docket No. 21) |
|---|---|---|---|---|
| Mark Davis | 48 | Security Access Coordinator | 11 | Ex. 3 |
| Susanne Dehnke | 47 | Customer Operations Specialist II | 25 | Ex. 4 |
| Frank Delaney | 57 | Senior Manager, Strategic Business Ventures | 22 | Ex. 5 |
| Paula Freeman-Brown | 54 | IS Manager | 34 | Ex. 6 |
| Barbara Fuglie | 50 | Senior Technician, Snacks Group | 33 | Ex. 7 |
| Richard Fuglie | 53 | Technologist | 18 | Ex. 8 |
| Christopher Gunn | 54 | Data Architect | 26 | Ex. 9 |
| Michelle Laurence | 44 | Customer Accounts Receivable Specialist | 26 | Ex. 10 |
| Robert Morris | 57 | Manager, Warehouse Management Systems Team | 16 | Ex. 11 |
| Vicki Nellen-Jungers | 45 | Payroll Operations Analyst | 7 | Ex. 12 |
| Heidi Neumann | 57 | Database Administrator | 33 | Ex. 13 |
| Greg Norman | 49 | Senior Manager, Finance Group | 22 | Ex. 14 |
| Michelle Race | 49 | Category Development Manager | 27 | Ex. 15 |
| Susan Ryan | 54 | HR Service Center Analyst | 35 | Ex. 16 |
| Timothy Schroeder | 57 | Senior Application Analyst | 18 | Ex. 17 |
| Diane Sundquist | 53 | Quality Specialist | 29 | Ex. 18 |
| Greg Zimprich | 48 | Director, Brand Public Relations | 19 | Ex. 19 |

(Am. Compl. ¶¶ 22, 104-238; Decl. of Pam Velcheck ("First Velcheck Decl."), Exs. 1-14, Mar. 5, 2015, Docket No. 8; Decl. of Pam Velcheck ("Second Velcheck Decl."), Exs. 1-19, Apr. 9, 2015, Docket No. 21.)

## II.    RELEASE AND ARBITRATION AGREEMENTS

At or about the date of their termination, each plaintiff signed a release and arbitration agreement ("release agreement") as a condition of receipt of an employee severance package.  (Am. Compl. ¶ 5; First Velcheck Decl., Exs. 1-14; Second Velcheck Decl., Exs. 1-19.)  The release agreement stipulates that any dispute or claim relating to the release agreement be resolved exclusively through final and binding arbitration on an individual basis.  (Am. Compl. ¶ 8; *see also, e.g.*, Second Velcheck Decl., Ex. 1.)  The two-page release agreement specifically includes the following language:

> I agree that, in the event there is any dispute or claim arising out of or relating to the above release of claims, including, without limitation, any dispute about the validity or enforceability of the release or the assertion of any claim covered by the release, all such disputes or claims will be resolved exclusively through a final and binding arbitration on an individual basis and not in any form of class, collective, or representative proceeding.

(*E.g.*, Second Velcheck Decl., Ex. 1 at 2.)  The arbitration agreements are expressly governed by the Federal Arbitration Act ("FAA").  (*Id.*)

In addition to requiring binding arbitration, the agreement also contains a broad release from all causes of action or claims against General Mills, including claims arising under the ADEA.  (*Id.*; Am. Compl. ¶ 8.)  Specifically, the release states:

> I hereby release [General Mills] . . . from all causes of action, claims, debts or other contracts and agreements which I . . . may have for any cause up to this date, including, but not limited to, any and all claims directly or indirectly relating to my employment, or to my separation from employment.  This release includes any and all claims under federal, state, and local laws prohibiting employment discrimination, harassment or retaliation, and specifically includes, without limitation, claims arising under the Age Discrimination In Employment Act . . . [and the] Older Workers Benefit Protection Act . . . .

(*E.g.*, Second Velcheck Decl., Ex. 1 at 2.)

## III.   PROCEDURAL HISTORY

The plaintiffs filed their initial complaint on February 11, 2015, alleging, among other claims, that General Mills improperly terminated the employment of 14 former employees due to their age, in violation of the ADEA.  (Compl. ¶¶ 1-26, Feb. 11, 2015, Docket No. 1.)  General Mills then filed a motion to dismiss the plaintiffs' complaint and compel individual arbitration, due to the release agreements signed by the plaintiffs. (Mot. to Dismiss & Compel Arbitration, Mar. 5, 2015, Docket No. 5.)  General Mills also seeks to strike the complaint's collective action allegations, and reasonable expenses. (*Id.*)

On March 26, 2015, the plaintiffs timely filed an amended complaint which added an additional 19 plaintiffs, but that otherwise remained substantially the same as the initial complaint.  (Am. Compl.)  Specifically, the amended complaint, like the initial complaint, asserts the following five counts: (1) ADEA declaratory judgment claim, seeking a declaration that the release agreements are unenforceable because they were not signed "knowingly and voluntarily" by the plaintiffs as prescribed by the ADEA and the

OWBPA; (2) ADEA collective action claim, alleging disparate treatment age discrimination; (3) ADEA individual claims, alleging disparate treatment age discrimination; (4) ADEA collective action claims, alleging disparate impact age discrimination; and (5) ADEA individual claims, alleging disparate impact age discrimination. (Am. Compl. ¶¶ 245-76.)

Two weeks later, General Mills filed an amended motion to dismiss and compel arbitration that was predominantly the same as its initial motion to dismiss, but which was updated to reflect the new plaintiffs in the amended complaint. (Am. Mot. to Dismiss & Compel Arbitration, April 9, 2014, Docket No. 20.) It is this amended motion to dismiss that is now before the Court.

The parties submitted additional briefing, but incorporate by reference all of the arguments made in their original motion to dismiss briefing. Per order of the Court, the Equal Employment Opportunity Commission ("EEOC") and the AARP also filed amicus briefs in opposition to General Mills' motion to dismiss.

## DISCUSSION

## I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more

than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp.*, 550 U.S. at 555 (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

As evidenced by the FAA, there is a strong federal policy in favor of enforcing arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). If claims are arbitrable under the FAA, the claims must be referred to arbitration, and the judicial proceedings must be stayed pending that arbitration. *See id.;* 9 U.S.C. §§ 2, 3. In determining whether a claim is arbitrable, the court must first decide whether a valid agreement to arbitrate exists between the parties, and then decide whether the specific dispute falls within the scope of that agreement. *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir. 1994). In engaging in the inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a

particular matter." *Simitar Entm't, Inc. v. Silva Entm't, Inc.,* 44 F. Supp. 2d 986, 992 (D. Minn. 1999).

## II.     GOVERNING FEDERAL LAW: ADEA AND OWBPA

ADEA claims cannot be waived unless the waiver is "knowing and voluntary." 29 U.S.C. § 626(f).   The OWBPA amended the ADEA, making a variety of changes. Relevant here, the OWBPA made it harder for companies to cajole employees, upon termination, to give up their ADEA rights – especially in the context of a large-scale group layoff, in which individual employees have little-to-no leverage.  S. Rep. No. 101-263, at 1511, 1520, 1537-41 (1990) (noting that in large-scale layoffs, "the terms of the [layoff or termination] programs generally are not subject to negotiation between the parties" and noting that under those "circumstances, the need for adequate information and access to advice before waivers are signed is especially acute"); H.R. Rep. No. 101-664 (1990); 135 Cong. Rec. E816-01, 1989 WL 172178 (Mar. 15, 1989) (statement of Rep. Augustus F. Hawkins) (stating the purposes underlying the Age Discrimination in Employment Waiver Protection Act of 1989, which was incorporated in large part into the OWBPA, and highlighting that the need for more stringent waiver requirements stems from employers' attempts to use waivers as a condition of severance pay at termination).

Specifically, Title II of the OWBPA created requirements with which waivers of ADEA rights must comply.  *See* Pub. L. No. 101-433, § 201, 104 Stat. 978 (1990). Under the OWBPA, a waiver of ADEA rights must comply with the following requirements in order for a waiver to be considered knowing and voluntary:

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F) (i) the individual is given a period of at least 21 days within which to consider the agreement; or (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

> (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. §§ 626(f)(1)(A)-(H)

The OWBPA also states that "[i]n any dispute that may arise over whether any of the [waiver] requirements [listed above] . . . have been met, the party asserting the validity of a waiver shall have the burden of proving **in a court of competent jurisdiction** that a waiver was knowing and voluntary." *Id.* § (f)(3) (emphasis added).

## III.    MOTION TO DISMISS AND COMPEL ARBITRATION

### A.    Law on Arbitration Agreements

General Mills argues that the plaintiffs' complaint must be dismissed, or at a minimum stayed, and that the Court must enter an order compelling the plaintiffs to resolve these claims in arbitration.  The company contends that, irrespective of the plaintiffs' contention that their waivers of their substantive ADEA claims in the release agreements did not meet the requirements of the OWBPA in Section 626(f)(1), (Am Compl. ¶¶ 245-51), the arbitration provision of the release agreements is still binding and compels the plaintiffs to make their argument regarding the validity of their waiver of substantive ADEA rights in an arbitral forum, not in federal court.  Whatever they may say about the broader release agreements, since the plaintiffs do not in any way challenge the validity of their arbitration agreements (e.g., that the signatures were forged or that they were forced to sign under duress), General Mills claims the arbitration provisions are valid and enforceable and there is nothing left for this Court to decide.  *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) ("The Supreme Court has established that an arbitral forum is, as a general matter, adequate to preserve statutory rights and adjudicate statutory claims."); *id.* (stating that an arbitration agreement will generally be upheld

"unless a party can show that it will not be able to vindicate its rights in the arbitral forum").

Indeed, in general, even if the broader agreement, of which an arbitration agreement is just a part, is held invalid, the Supreme Court has held that the arbitration provisions are severable and still valid. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-49 (2006) (noting that the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), "permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void"); *see also Nitro-Lift Techs., LLC v. Howard*, 133 S. Ct. 500, 503 (2012) (distinguishing between "attacks on the validity of the contract [waiving substantive claims]" and "attacks on the validity of the arbitration clause itself," and noting that the former "are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" (quoting *Preston v. Ferrer*, 552 U.S. 346, 349 (2008))); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-72 (2010) (noting that an arbitration provision is severable from the remainder of the contract, and that any challenge to the underlying agreement belongs in arbitration, but that federal courts can hear challenges as to the validity of the arbitration provision specifically under 9 U.S.C. § 2).  Here, then, General Mills argues that even if the plaintiffs are right that their substantive waivers of ADEA claims are invalid because they do not comply with the requirements of Section 626(f)(1) of the OWBPA, the arbitration provisions would still be severable, valid, and enforceable.

Despite these general principles, there are instances in which an arbitration agreement is not enforceable.  While the FAA requires enforcement of an arbitration

agreement in general, the Supreme Court and the Eighth Circuit have also noted that an express "contrary congressional command" in a different statutory regime might "preclude a waiver of the judicial forum." *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013). The dispute at the heart of this case is whether OWBPA contains any contrary congressional command that would preclude enforcement of the arbitration agreements in this case.

The Supreme Court has, to some extent, considered whether any such command exists in the ADEA. In *Gilmer v. Interstate/Johnson Lane Corp.*, the defendant company hired Robert Gilmer as a Manager of Financial Services. 500 U.S. 20, 23 (1991). His registration application with the New York Stock Exchange – which he filled out upon starting the job – included an arbitration provision. *Id.* After being terminated due to what he alleged was his age, Gilmer filed an age discrimination lawsuit in federal court. *Id.* at 23-24. The defendants moved to compel arbitration, and the Court granted certiorari to resolve a split amongst the circuits regarding the arbitrability of ADEA claims. *Id.* at 24. Gilmer conceded that the ADEA said nothing explicitly to preclude arbitration provisions, but argued instead that the text and history of the ADEA evinced congressional intent to preclude them. *Id.* at 26-27. The Court rejected this argument, finding that waiver of a judicial forum would not contravene the clear language of the statute, or its underlying purposes. *Id.* at 27-29. The Court also rejected Gilmer's argument that an arbitral forum is inadequate for vindicating his rights. *Id.* at 30-32. The Court concluded that the plaintiff had "not met his burden of showing that Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act." *Id.* at 35.

Of course, the OWBPA was brand new at the time of the decision in *Gilmer*, so it is helpful to look to more recent decisions on the subject.

*14 Penn Plaza LLC v. Pyett* involved the plaintiffs' attempt to challenge an arbitration provision in union members' collective bargaining agreement.  556 U.S. 247, 251 (2009).  The plaintiffs argued that "an individual employee must personally 'waive' a '[substantive] right' to proceed in court for a waiver to be 'knowing and voluntary' under the ADEA."  *Id.* at 259.  In other words, since Section 626(f)(1) states that an individual may not waive a right or claim unless the waiver is knowing and voluntary, and since the plaintiffs argued that a "right or claim" under that provision included the right to proceed in court, a joint waiver of the judicial forum in a collective bargaining agreement that did not comply with Section 626(f)(1) was not knowing and voluntary and was therefore invalid.  *Id.*

The Court disagreed, holding that "the agreement to arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed in the ADEA"[3] and, as a result, the waiver requirements of Section 626(f)(1) do not apply to arbitration agreements, nor do they in any way express an intent on the part of Congress to discourage arbitration agreements in the ADEA context.  *Id.* at 259-60.  The Court also noted that while one requirement of Section 626(f)(1) invalidates a waiver that gives up **future** substantive ADEA claims, that provision is not triggered by an arbitration

---

[3] As the AARP noted at argument, despite the Supreme Court's implication to the contrary, it does not appear that the term "substantive right(s)" appears anywhere in the ADEA.  *See* 29 U.S.C. 621, *et seq.*

agreement. *Id.* at 259, 265-66 ("The decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance.").

### B.      Plaintiffs' Arguments Regarding the Enforceability of the Arbitration Agreement

The plaintiffs offer a variety of arguments for why these cases do not require the Court to uphold the arbitration provision in the release agreements.  First, they argue that the ADEA includes a jury trial right, *Hammaker v. Brown & Brown, Inc.*, 214 F. Supp. 2d 575, 578-79 (E.D. Va. 2002) ("It is well settled that the ADEA confers the right to a jury trial.  29 U.S.C. § 626(c)(2)."), and that, under Section 626(f)(1), any waiver of that right must be knowing and voluntary, *see Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060, 1064-65 (S.D. Cal. 1999) (holding that "the plain language [o]f [the OWBPA] requires that waivers of any statutory ADEA rights [, including the right to a jury trial,] must meet the § 626(f)(1) [waiver] requirements"). The problem with that argument is that *14 Penn Plaza* clearly held the opposite, implicitly overruling cases like *Thiele*.  In *14 Penn Plaza*, the Supreme Court explicitly stated that an arbitration agreement did not need to meet the "knowing and voluntary" requirements of Section 626(f)(1).  556 U.S. at 259.  As a result, the plaintiffs' argument that their waiver of their right to proceed in court must meet the requirements of the OWBPA in Section 626(f)(1) fails under explicit Supreme Court precedent.

More persuasively, however, the plaintiffs argue that Section 626(f)(3) controls in this case.  That provision states that in "any dispute that may arise over whether any of the requirements, conditions, and circumstances set forth in [Section 626(f)(1)] have been met, the party asserting the validity of a waiver **shall** have the burden of proving in a **court of competent jurisdiction** that a waiver was knowing and voluntary."  29 U.S.C. § 626(f)(3) (emphasis added).  According to the plaintiffs, because they dispute that the substantive waivers of their ADEA claims do not meet the requirements of Section 626(f)(1), Section 626(f)(3) requires General Mills to assert the validity of that waiver in court – not an arbitral forum.

General Mills cites *CompuCredit v. Greenwood* for the proposition that an arbitral forum is a sufficient substitute for a court of competent jurisdiction.  132 S. Ct. 665, 670-71 (2012).  *CompuCredit*, while not an ADEA or OWBPA case, provides a useful gloss on *Gilmer* and the Court's ADEA cases.  In *CompuCredit*, the Supreme Court stated that it had "repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court."  *Id.*  The Court reached this conclusion by discussing its earlier ADEA decision in *Gilmer*.  It recounted that *Gilmer* had analyzed a pre-OWBPA provision of the ADEA, namely the provision in Section 626(c)(1) that states, today, that a person suffering ADEA harms "'**may** bring a civil action in any court of competent jurisdiction.'"  *Id.* at 670 (quoting 29 U.S.C. § 626(c)(1)) (emphasis added).  The Court in *Gilmer* rejected the argument that Section 626(c)(1) amounted to a command from Congress that the presumption in favor of arbitration did not apply in the ADEA context.  *Id.*  It found that an arbitration agreement

was valid, despite Section 626(c)(1)'s statement that an ADEA victim **could** bring a claim in a court of competent jurisdiction. *Id.* .

The key distinction between the *Gilmer* decision and the very recent *CompuCredit* gloss on *Gilmer*, and this case, is that those decisions discuss Section 626(c)(1), while the plaintiffs' argument is based on Section 626(f)(3).  In other words, while the *Gilmer* and *CompuCredit* decisions rest on a statutory provision that read at the time of *Gilmer* that a plaintiff could bring a suit "in any court of competent jurisdiction," *Gilmer*, 500 U.S. at 29 (internal quotation marks omitted), and that now reads that "[a]ny person aggrieved **may** bring a civil action in any court of competent jurisdiction," 29 U.S.C. § 626(c)(1) (emphasis added), the plaintiffs rely on a provision that states that, in a dispute over whether the waiver requirements of the OWBPA have been complied with, "the party asserting the validity of a waiver **shall** have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary," *id.* § 626(f)(3).

The Court finds that this distinction is critical in this case and concludes that the plain language of Section 626(f)(3) requires General Mills to defend the validity of the plaintiffs' release agreements in court, not in an arbitral forum.  It is a contrary congressional command precluding arbitration in the narrow circumstances presented in this case: a dispute over the validity of a waiver of substantive claims under the OWBPA's waiver requirements found in Section 626(f)(1).  First, despite General Mills'

citation to *Gilmer*, *14 Penn Plaza*, and *CompuCredit*, and to various out-of-circuit cases[4] interpreting arbitration waivers in the OWBPA context, it has not cited a contrary interpretation of Section 626(f)(**3**) specifically.   Second, the plain language in Section 626(f)(3) – using the term "shall" in particular – is markedly different from not just Section 626(c)(1), but also from other provisions in the ADEA   *See, e.g.*, 29 U.S.C. § 623(f)(2) ("An employer, employment agency, or labor organization acting under [this provision] shall have the burden of proving that such actions are lawful in any **civil enforcement proceeding** brought under this chapter.").[5]   The Court presumes Congress intended to give different words different meaning, and that where a word like "shall" is included in some provisions and not others, that choice was deliberate.   *Osthus v. Whitesell Corp.*, 639 F.3d 841, 850 (8th Cir. 2011).   Moreover, to the extent General Mills tries to argue that "court of competent jurisdiction" also means an arbitral forum, many

---

[4] *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 660 (5th Cir. 1995) (stating that "the OWBPA protects against the waiver of a right or claim, not against the waiver of a judicial forum"); *see also Seus v. John Nuveen & Co.*, 146 F.3d 175, 181-82 (3d Cir.1998) ("[T]he protection [the OWBPA] affords is limited to the waiver of substantive rights under the ADEA"); *Rojas v. Lewis Brisbois Bisgaard & Smith LLP*, No. 13-01256, 2014 WL 3612568, at *5 (D. Nev. July 18, 2014) ("OWBPA's 'knowing and voluntary' requirements only apply to substantive rights, not to procedural rights such as the right to a jury trial that is waived in an arbitration agreement."); *Bennett v. Dillard's, Inc.*, 849 F. Supp. 2d 616, 618 (E.D. Va. 2011) ("The courts that have examined this issue have almost uniformly held that the OWBPA's waiver requirements apply only to substantive rights.  Further they have held that an agreement to arbitrate does not waive a substantive right but rather waives a procedural mechanism – the judicial forum – to enforce the right.").

[5] General Mills points out that Section 623(f) is drafted more broadly because it refers to defenses that could be raised either in court or in a proceeding before the EEOC.  That being the case, Section 623(f), along with Section 626(c)(1), both demonstrate that Congress explicitly uses broader language in some provisions than the more stringent language of Section 626(f)(3), which plainly evinces a congressional intent to force a debate over the validity of a waiver under the OWBPA into court.

- 19 -

courts, and arbitration agreements themselves, have recognized that "**court** of competent jurisdiction" refers to a **court**. *See Kelly v. Ala. Title Loans, Inc.*, No. 14-2464, 2015 WL 3467090, at *4 (N.D. Ala. June 2, 2015) ("[T]he Arbitration Agreement also provides that 'all questions regarding whether an issue is subject to arbitration shall be determined by the arbitrator, not a court of competent jurisdiction.' . . . Accordingly, . . . an arbitrator, not the district court, must decide whether those claims are within the scope of the arbitration agreement." (internal alterations and quotation marks omitted)); *Stephens v. TES Franchising*, No. 01-2267, 2002 WL 1608281, at *3 (D. Conn. July 10, 2002) ("In short, what the arbitration provision expressly provides is taken away several pages later by the separate provision that all disputes be submitted to a court of competent jurisdiction."). Thus, the plain language of Section 626(f)(3) clearly mandates that a dispute over the validity of a waiver of substantive claims or rights under the OWBPA, like in this case, shall be heard by a court, not an arbitral forum.

General Mills argues this provision is not nearly as clear as other congressional commands that preclude arbitration agreements. *See, e.g.*, 7 U.S.C. § 26(n)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."); 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."). While it is true that Section 626(f)(3) is not as explicit as some provisions that preclude arbitration, the provision should also be viewed in the context of the OWBPA and its history, more broadly. When viewed in context, it is clear that Congress wanted courts to interpret and apply the

OWBPA waiver provisions at Section 626(f)(1), to ensure waivers meet their requirements.  Most obviously, throughout its discussion of the purposes underlying the OWBPA's ADEA waiver provisions, the Senate Report on the OWBPA repeatedly refers to the critical role **courts** will play in interpreting and applying those waiver requirements and ensuring that waiver agreements pass muster.  S. Rep. No. 101-263, at 1537 (1990) ("The Committee expects that **courts** reviewing the 'knowing and voluntary' issue will scrutinize carefully the complete circumstances in which the waiver was executed." (emphasis added)); *id.* ("The bill establishes specified minimum requirements that must be satisfied before a **court** may proceed to determine factually whether the execution of a waiver was 'knowing and voluntary.'" (emphasis added)); *id.* at 1538 ("The Committee expects that **courts** will pay close attention to the language used in the agreement, to ensure that the language is readily understandable to individual employees regardless of their education or business experience." (emphasis added)); *id.* at 1540 (restating the language of Section 626(f)(3)).

This history, combined with the language of Section 626(f)(3), makes clear that, in the narrow circumstances of cases like this one, an arbitration provision is precluded.  As a result, the Court will deny General Mills' motion to dismiss and compel arbitration and, instead, will allow this case to proceed for further motion practice and an eventual

determination by the Court as to whether the release agreements at issue comply with the

waiver provisions of the OWBPA at Section 626(f)(1).[6]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that General Mills' Amended Motion to Dismiss and to Compel

Arbitration on an Individual Basis [Docket No. 20] is **DENIED**.  General Mills' requests

to strike the plaintiffs' collective action allegations and for reasonable expenses [Docket

No. 20] are also **DENIED**.

DATED:  October 23, 2015                    _____
at Minneapolis, Minnesota.                  s/ John R. Tunheim

                                            JOHN R. TUNHEIM
                                            Chief Judge
                                            United States District Court

---

[6] Because the Court bases its decision on the language of Section 626(f)(3), it need not reach other arguments by the plaintiffs and amici, such as the compelling argument that the release agreements did not meet the understandability requirements of Section 626(f)(1)(A) by seeming to foreclose the employee's ability to raise ADEA claims in court.

Additionally, given that the Court's decision precludes enforcement of the arbitration provision at this point, and that the waiver of collective action is an integral part of that provision, the Court in denying General Mills' motion to dismiss also denies the company's request to compel arbitration on an **individual basis**.  Given the OWBPA's obvious concern for employees terminated in large-scale layoffs who have little leverage, S. Rep. No. 101-263, at 1511, 1520, 1537-41 (1990), it makes sense that Section 626(f)(3) would preclude not just an arbitration agreement, but also one that forces individual action.  Finally, the dismissal of General Mills' motion to dismiss also means the Court will reject the company's request for reasonable expenses.